Gladstein, Reif & Meginniss, LLP
39 Broadway, Suite 2430
New York, New York    10006

Attorneys for Plaintiffs


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

OREN BARZILAY, as President of UNIFORMED
EMTS, PARAMEDICS, AND FIRE INSPECTORS,
LOCAL 2507, DC 37, AFSCME; UNIFORMED EMTS,
PARAMEDICS, AND FIRE INSPECTORS,
LOCAL 2507, DC 37, AFSCME;
ELIZABETH BONILLA; ALEXANDER NUNEZ;
MEGAN PFEIFFER; and JOHN RUGEN,

                                           JURY TRIAL DEMANDED

                         Plaintiffs,

            - against -
                                              20-cv-04452 (LJL)


THE CITY OF NEW YORK, DANIEL
NIGRO, as Commissioner of the Fire Department
Of the City of New York, and CARLOS VELEZ,

                                                      **SECOND**
                         Defendants.         **AMENDED COMPLAINT**
----------------------------------------------------------------X


            Plaintiffs Oren Barzilay, Uniformed EMTs, Paramedics, and Inspectors, Local

2507, DC 37, AFSCME (hereinafter "Local 2507"), Elizabeth Bonilla, Alexander Nunez, Megan

Pfeiffer, and John Rugen, by their attorneys Gladstein, Reif & Meginniss, LLP, as and for their

complaint against defendants New York City ("NYC"), Daniel Nigro, as Commissioner of the

Fire Department of the City of New York, and Carlos Velez, allege the following:

- 1 -

## PRELIMINARY STATEMENT

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress (1) the retaliatory suspension and imposition of employment restrictions by the Fire Department of the City of New York ("FDNY") against the individual plaintiffs – EMT Rugen and Paramedics Bonilla, Nunez and Pfeiffer – in response to their communications with the press and without any due process of law; (2) the implementation by the FDNY of policies that deprive EMTs and Paramedics of their right to communicate on matters of public concern; and (3) the FDNY's practice and policy of imposing punitive employment restrictions that serve to stigmatize EMTs and Paramedics and bar them from practicing their profession without affording them any opportunity to challenge such restrictions or clear their name. Plaintiffs contend that Defendants' actions violated the First Amendment of the U.S. Constitution, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, as well as the Free Speech Clause of the New York Constitution, Article I, § 8 and the Due Process Clause of the New York Constitution, Article I, § 6.

2.      Plaintiffs seek a declaratory judgment, injunctive relief, including a make-whole remedy to restore compensation lost by plaintiffs as a result of defendants' conduct, and compensatory damages.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as a controversy arising under the Constitution or laws of the United States, pursuant to 28 U.S.C. § 1337, and pursuant to 28 U.S.C. § 1343(4), as an action to secure relief under a federal civil rights statute.   The Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) because defendant City of New York resides in the Southern District and is subject to the Court's personal jurisdiction.

## PARTIES

5.     Plaintiff Local 2507 is a labor organization, headquartered in Queens, NY. Its members are EMTs, Paramedics, and Fire Inspectors employed by the FDNY.   Local 2507 exists for the purpose of improving the terms and conditions of employment of its members. Among other things, Local 2507 officers and agents defend members in work-related disciplinary proceedings.

6.     Plaintiff Oren Barzilay is the President of Local 2507 and brings this action in his official capacity.

7.     Plaintiff John Rugen is employed by the FDNY as an EMT (also referred to as an Emergency Medical Services Specialist) and holds permanent status in that position. On or about April 26, 2020, FDNY suspended Mr. Rugen's employment. Mr. Rugen is an elected officer of Local 2507.

8.     Plaintiff Elizabeth Bonilla is employed by the FDNY as a Paramedic (also referred to as an Advanced Emergency Services Specialist) and holds permanent status in that position. On or about April 26, 2020, FDNY restricted Ms. Bonilla's employment.

9.     Plaintiff Alexander Nunez is employed by the FDNY as a Paramedic (also referred to as an Advanced Emergency Services Specialist) and holds permanent status in that position. On or about April 26, 2020, FDNY restricted Mr. Nunez's employment.

10.     Plaintiff Megan Pfeiffer is employed by the FDNY as a Paramedic (also referred to as an Advanced Emergency Services Specialist) and holds permanent status in that position.   On or about April 26, 2020, FDNY restricted Ms. Pfeiffer's employment.

11.     Defendant NYC is the largest municipality in the State of New York. Under the terms of the New York Constitution, NYC is empowered to exercise police powers in the territory within its jurisdiction. Defendant NYC is a person within the meaning of 42 U.S.C. § 1983.   The FDNY is an agency of NYC. The FDNY provides emergency medical services in the 911 system in NYC.

12.     Defendant Daniel Nigro is the Commissioner of the FDNY. In that position, he is the chief executive officer of the FDNY and responsible for the implementation of its policies, practices and customs.

13.     Defendant Carlos Velez is an Assistant Commissioner of the FDNY and is the official at FDNY who is responsible for the decisions to suspend and restrict the employment of Plaintiffs Rugen, Bonilla, Nunez, and Pfeiffer which are the subject of this action. He is sued in his individual capacity.

## FACTS

14.     On January 30, 2020, the World Health Organization designated the novel coronavirus, COVID-19, outbreak as a Public Health Emergency of International Concern.

15.     On January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19;

16.     By Executive Order dated March 7, 2020, Governor Andrew Cuomo declared a disaster emergency in the State of New York due to the impact of COVID-19.

17.     On March 13, 2020, Mayor Bill de Blasio issued a state of emergency for the City of New York related to response efforts for managing the COVID-19 pandemic.

## The Union's Public Communications Campaign

18.     Beginning in late 2019, Local 2507 has launched a campaign to publicize the difficulties faced by the Union's members in their performance of emergency medical services in New York City.   Those difficulties multiplied as COVID-19 arrived.   On March 5, 2020, Union Vice President Michael Greco testified before the New York City Council and reported that, in his judgment, the City's emergency medical services system was not prepared for the pandemic.   As the COVID-19 crisis exploded in the City over the next several weeks, the Union increased its efforts to bring public attention to stresses, difficulties and dangers of the work performed by its members.

19.     The Union was particularly concerned that the FDNY was failing to bring this important information to the attention of the public.   While the FDNY promoted some coverage of this subject, the Union decided that the narratives promoted by the FDNY were not providing complete information concerning the working conditions of its members. Media outlets are and were very interested in featuring stories about the working conditions of Local 2507 members, and they sought to communicate directly with EMTs and Paramedics working in New York City's 911 system.   Local 2507 determined that such media coverage was beneficial to its members and sought to assist these media outlets.

20.     On March 31, 2020, for example, Mr. Barzilay was quoted in a New York Post story noting that 282 FDNY members — EMS, firefighters and civilian workers — had tested positive for COVID-19.   In the article, which included photos of Plaintiff Megan Pfeiffer, Mr. Barzilay is quoted as saying: "It's really heart-wrenching work. It's going into a house and not knowing what to expect. . . We're taking sick people to the hospitals not knowing if they're going to come out alive or not." https://nypost.com/2020/03/31/were-bringing-covid-19-patients-to-hospitals-to-die-nyc-paramedic/.

21.     In an appearance on ABC News on March 31, 2020, Mr. Barzilay relayed that "Dozens and dozens of members who are sleeping in their cars because they don't want to bring it to their families." https://abcnews.go.com/Health/ems-front-lines-dealing-madness-sleeping-cars-avoid/story?id=69901930   An on-line print version of the same story quoted Mr. Barzilay saying that while his members were "still holding the line" and doing what was necessary to save lives, they were short on protective equipment and needed supplies.   The same newscast includes an account by Plaintiff John Rugen about having not seen his son in a week. The on-line print version mentions that Mr. Rugen has stage 4 lung cancer from Sept. 11 and that even cigarette smoke could close his lungs.

22.     In response to this campaign, the FDNY has retaliated against EMTs and Paramedics who have spoken with or been filmed by journalists by suspending them or "restricting" their employment as EMTs and Paramedics without notice or an opportunity to be heard.

23.     In fact, the FDNY takes the position that such employment restrictions are "non-disciplinary" and consistent with its policy and practice of removing EMTs and Paramedics from patient care indefinitely while it ostensibly conducts investigations.

### The FDNY's Suspension of John Rugen

24.     In addition to holding a job with the FDNY as a Paramedic, Plaintiff John Rugen is an officer of Local 2507.   He is a permanent employee with a legitimate expectation of continued employment except for cause.

25.     Beginning in February, 2020, Mr. Rugen has participated in the Union's publicity campaign.   In that connection, he has communicated with the media on working conditions of EMTs and Paramedics during the pandemic and has assisted journalists in reaching out to Paramedics and EMTs.

26.     On or about April 26, 2020, the FDNY suspended Mr. Rugen's employment.   He received no compensation from the FDNY while suspended.   Without any prior notice, he was given a letter signed by the FDNY Deputy Director of the Bureau of Investigations and Trials that stated only the following: "This suspension is based on your violation of the FDNY's Social Media and HIPAA Privacy Policies, New York State Public Health Law and Federal Patient Privacy Law/Regulations on or about April 10, 2020."   The memorandum recounting the suspension of Mr. Rugen specified that he must report on May 26, 2020, to the Bureau of Health Services for a physical examination, and, after that examination, appear before the Bureau of Investigations and Trials.   He was provided no other information concerning the purported grounds for the suspension, nor for the FDNY's conclusions that he had violated its policies.   He was not asked questions about any incident or occurrence and was given no opportunity at all to address the conclusory violations alleged in the memorandum.

27.     On April 27, 2020, Local 2507, by its counsel, wrote the FDNY's Chief Legal Counsel and Deputy Commissioner for Legal Affairs and Administration, Terryl Brown, complaining (1) that Mr. Rugen had not been afforded notice of what the department believed he had done wrong, and (2) that the FDNY had not investigated claims of wrongdoing before acting. Ms. Brown responded that the action taken was not disciplinary or punitive but was only a "precautionary measure" taken while the FDNY investigated charges of misconduct.   Ms. Brown did not identify in any respect the nature of those charges.   She stated that the actions taken by the FDNY were "not new" and constitute a practice commonly used by the FDNY.

28.     The FDNY has a practice and custom of suspending EMTs and Paramedics from employment for up to thirty days without providing notice or an opportunity to be heard on the grounds upon which the suspension was imposed.

29.    Pursuant to its practice and policy, at the conclusion of such a 30-day suspension, the FDNY frequently merely restores the individual to employment in a "restricted" capacity, still without providing the individual with notice of the grounds upon which the suspension was imposed or with an opportunity to be heard on why those grounds are not meritorious. And pursuant to that practice and policy, the FDNY may choose not to provide notice to the employee of the grounds for the suspension or with an opportunity to be heard to contest those grounds at the close of the 30-day suspension.   The FDNY's practice and policy is to provide such notice and opportunity only if it decides to initiate what it deems to be "disciplinary" action, and contends that it is not required to initiate any such disciplinary action for as long as eighteen months following the date of the incident or event that caused it to impose a suspension.   Should the FDNY decide not to bring what it considers to be "disciplinary" actions, its practice is to never provide the employee with notice of the grounds for the suspension or with an opportunity to contest those grounds.

30.    Similarly, although employment in a "restricted" status has severe adverse effects on the individual employee's earnings and professional opportunities, as described below, the FDNY's practice is to retain employees in such "restricted" status for indefinite and lengthy periods of time, without providing the grounds for the restriction and without providing the affected employee an opportunity to show that the grounds are not meritorious. Pursuant to the FDNY's practice and policy, EMTs and Paramedics may never be provided with an explanation of the grounds upon which a suspension or restriction was imposed.   Indeed, some employees are never afforded a hearing on whether the grounds are meritorious.

31.    On May 26, 2020, Mr. Rugen reported to the Bureau of Health Services and then to the Bureau of Investigations and Trials, as directed.   He was advised that his suspension had been lifted and that he was restored to duty.   However, he was also advised that

his employment was restricted." He was provided no other information as to the grounds for the suspension or restriction. He was not questioned by any FDNY representative about any of his prior conduct that might have caused FDNY to suspend and then "restrict" him.

32. While in "restricted" status, Mr. Rugen was not permitted to wear his uniform to work, he was not permitted to perform patient care, and he was not eligible for overtime assignments regularly associated with the performance of patient care work.

33. On June 9, 2020, a representative of Local 2507 was notified for the first time that a FDNY official was interested in interviewing Mr. Rugen.

34. On June 10, 2020, this action was initiated with the filing of the complaint. The complaint was served on June 11, 2020. On June 12, 2020, immediately following service of the complaint in this action, James Saunders, Chief Health Care Compliance and HIPAA Privacy Officer of the FDNY, sent to counsel who had appeared for Mr. Rugen in this action a "Notice of Interview" ordering Mr. Rugen to appear for an interview on June 17, 2020.

35. Mr. Rugen appeared with counsel at the interview as scheduled. At the interview, Mr. Rugen was questioned regarding his interactions with the press on April 10 and 11, 2020, and on the content of stories published by the Australian Broadcasting Company concerning events of those same two days. Mr. Rugen was questioned as to whether he had, in the course of engaging with members of that broadcasting team, revealed patients' health information. He reported that he had not. Mr. Rugen was advised by the interviewers that they were not responsible for the suspension and restriction of his employment. The interviewers did not give notice to Mr. Rugen of the reasons for his suspension and restriction and made clear that they were not empowered to address Mr. Rugen's contention that any purported grounds for the suspension and restriction were without basis.

36.     Immediately following this interview, on June 18, 2020, the FDNY lifted the restrictions on Mr. Rugen's employment.   He has been returned to full duty.   He has, however, been advised that the "investigation" is continuing.

37.     Pursuant to the FDNY's practice and custom, Mr. Rugen has no reason to know when, if ever, he will be provided meaningful notice and an opportunity to be heard on his contention that the grounds for suspension and any subsequent restriction lack merit.

38.     Mr. Rugen notified only that his suspension is based on an incident that occurred on April 10, 2020.   From that notification, and from the content of the questioning in his June 17 interview, it is apparent that there is no lawful basis for the suspension and that the FDNY's conduct violates Mr. Rugen's freedom of speech.   On April 10, 2020, the date referred to in the suspension memorandum, Mr. Rugen had an approved "excused absence" from his regular duties to perform Union duties.   That is, he was not working for the FDNY on that day.

39.     On April 10, he engaged with members of the Australian Broadcasting Company which was reporting on matters of enormous public interest, including the extremely difficult and dangerous working conditions of FDNY EMTs and Paramedics working in the City of New York during the height of the COVID-19 pandemic and the enormous strains on the City's health care systems and the emergency medical services provided by the FDNY.

40.     Mr. Rugen's communications with the media were undertaken as a citizen and as a Union officer.   He never held himself out to be speaking for the FDNY.   His activities were a substantial element of the Union's public awareness campaign.   Nothing in Mr. Rugen's communications with the media harmed the internal operations of the FDNY or impaired the harmonious working relations of FDNY employees.   In fact, the essence of those communications and the resulting media reporting was that EMTs and Paramedics were performing their work heroically under extremely difficult circumstances.

41.     Nothing that Mr. Rugen said in his communications with the media revealed any personal health information of any individual. Upon information and belief, no individual has complained that any of Mr. Rugen's communications resulted in the unlawful disclosure of that individual's protected health information.

42.     Upon information and belief, the FDNY suspended Mr. Rugen and subsequently restricted his employment because of his communications with the press on April 10, 2020.

43.     Upon information and belief, the decisions to suspend Mr. Rugen and to restrict his employment were made by Defendant Carlos Velez.   Upon information and belief, Defendant Carlos Velez knew or should have known that the suspension of Mr. Rugen and restriction of his employment because of his communications with the press were unconstitutional actions, or, Defendant Carlos Velez took those actions with reckless disregard for their unconstitutionality.   Further, upon information and belief, Defendant Carlos Velez knew or should have known that the failure to provide Mr. Rugen notice of the grounds for these actions and a timely meaningful opportunity to be heard as to why those purported grounds are meritless was an unconstitutional action, or was in reckless disregard for its unconstitutionality.

44.     Plaintiff Rugen suffered great anxiety as a result of these unconstitutional acts.

### The FDNY Practice of "Restricting" Employment Without Notice and a Hearing

45.     The FDNY has a practice and policy of "restricting" an EMT or Paramedic when the FDNY has concluded the individual may have committed misconduct or improper patient care of some kind.   The FDNY's practice and policy is to impose such restrictions for indefinite durations.   The FDNY frequently imposes such restrictions without informing the affected employee of the basis for the action and continues the restriction for

significant periods of time while the FDNY considers what additional steps to take. Such next steps may include suspending or terminating the employee, or restoring the employee to unrestricted status without any further adverse action. In those instances in which the FDNY decides to restore the affected individual to unrestricted status, it is the practice and custom of the FDNY not to reimburse the affected individual for the pay lost as result of having been placed in restricted status. Further, it is the practice and policy of the FDNY not to inform the employee of the specific allegations of wrongdoing that led to the "restriction" while the employee is in restricted status.

46. For most EMTs and Paramedics, the FDNY's imposition of such a restriction has an immediate adverse impact on their earnings. The individual is no longer eligible to work extended shifts or extra shifts, is deprived of pay premiums associated with working at night, and is deprived of allowances otherwise available to EMTs and Paramedics who work in the field.

47. When the FDNY places an EMT or Paramedic in a "restricted" status, the restriction affects more than just the individual's employment with the FDNY. The FDNY's restriction bars the individual from performing any similar emergency medical services in New York City's 911 system.

48. A number of private, voluntary hospitals operate ambulances that provide emergency medical service in the 911 system. Many EMTs and Paramedics who work for the FDNY also perform such work for voluntary hospitals that deploy ambulances in the 911 system. Many EMTs and Paramedics depend upon the income from those jobs to assure themselves a sufficient income to sustain their families.

49. When the FDNY restricts one of its EMTs or Paramedics who also holds a job working in the 911 system for another employer, the FDNY communicates to that other

employer that the individual may not be deployed to work on ambulances providing emergency medical services in the 911 system.   Because of these communications, the affected individuals are effectively deprived of the opportunity to practice their profession.

50.     Indeed, because a FDNY Paramedic or EMT who has been "restricted" by the FDNY is unable to work on patient care in the 911 system, that individual is not at liberty to leave the FDNY and take up similar work for voluntary hospitals that operate ambulances in the system until the restriction is "cleared."   It is the practice and policy of the FDNY not to clear the deployment of that individual to perform such work when the individual has been "restricted" by FDNY.

51.     The FDNY does not provide any notice or hearing opportunity for a "restricted" EMT or Paramedic to clear that restriction.

**The FDNY's Restrictions of EMTs and Paramedics Who Communicated with the Press**

52.     Elizabeth Bonilla is a permanent FDNY employee with a legitimate expectation of continued employment except for cause.

53.     In April, 2020, camera crews followed plaintiff Elizabeth Bonilla as she responded to 911 calls.   Ms. Bonilla also gave interviews to the press and was included in network news broadcasts and print news, in which she spoke about the prevalence of COVID-19 cases in New York City, the emotional toll of dealing with patients who are dying, and the difficult working conditions of FDNY EMTs and Paramedics working in the City of New York during the height of the COVID-19 pandemic.   She also spoke about her own fear and grave concerns about being able to continue to provide for her family and not expose them to the virus, anticipating that many of her colleagues will suffer from anxiety and PTSD.

54.     The content of the media coverage in which Ms. Bonilla can be seen concerned matters of enormous public interest, including the extremely difficult working

conditions of FDNY EMTs and Paramedics working in the City of New York during the height

of the COVID-19 pandemic and the enormous strains on the City's health care systems and the

emergency medical services provided by the FDNY.

55.     Ms. Bonilla's communications with the media were undertaken as a

citizen and not as an employee of the FDNY. She never held herself out to be speaking for

anyone other than herself.

56.     Nothing that Ms. Bonilla said in her communications with the media

revealed any protected health information of any individual. Upon information and belief, no

individual has complained that any of Ms. Bonilla's communications resulted in the unlawful

disclosure of that individual's protected health information.

57.     Nothing in Ms. Bonilla's communications harmed the internal operations

of the FDNY or impaired the harmonious working relations of FDNY employees.   In fact, the

essence of those communications and the resulting media reporting was that EMTs and

Paramedics were performing their work heroically under extremely difficult circumstances.

58.     By letter dated April 26, 2020, the same day Mr. Rugen was suspended

without pay, the FDNY informed Ms. Bonilla that it was "restricting" her from performing

patient care work. The FDNY letter offered no reason for such restriction.

59.     Upon being restricted, Ms. Bonilla's ability to earn allowances associated

with working at night, and to earn other allowances otherwise available to EMTs and Paramedics

who work in the field, has been curtailed.   She is required to report to work each day, but is not

permitted to wear a uniform.   Because of the FDNY's policy of notifying other entities that

provide emergency medical services in the 911 system of the restriction, and, by that

notification, precluding those entities from deploying Ms. Bonilla as a Paramedic on one of their

ambulances in the 911 system, Ms. Bonilla is effectively barred from practicing her profession.

60. On April 27, 2020, Local 2507, by its counsel, wrote the FDNY's Chief Legal Counsel and Deputy Commissioner for Legal Affairs and Administration, Terryl Brown, complaining (1) that Ms. Bonilla had not been afforded notice of what the department believed she had done wrong and (2) that the FDNY had not investigated claims of wrongdoing before acting. Ms. Brown responded that the action taken was not disciplinary or punitive but was only a "precautionary measure" taken while the FDNY investigated charges of misconduct. Ms. Brown did not identify in any respect the nature of those charges. She stated that the actions taken by the FDNY were "not new" and constitute a practice commonly used by the FDNY.

61. The FDNY did not otherwise provide Ms. Bonilla any information at all concerning the bases for her restriction. However, immediately prior to the imposition of the restriction, one of her supervisors required Ms. Bonilla to write a report concerning her communication with reporters who had followed her while she worked.

62. Following her submission of this report, Ms. Bonilla was never asked for any additional information and she was never advised by FDNY personnel that she had done something wrong.

63. Upon information and belief, the FDNY restricted Ms. Bonilla's employment because of her communications with the press.

64. On June 17, 2020, only hours after Plaintiff John Rugen was interviewed by FDNY personnel, Ms. Bonilla was notified that her restriction was lifted. She was restored to full duty. She has never been interviewed or questioned in any way by the FDNY concerning the grounds for her restriction. She has not been provided any information concerning the FDNY's decision to lift the restriction. She has not been advised whether the FDNY has reached a conclusion regarding its concerns about her conduct that led to the imposition of the restriction.

65.     Alexander Nunez is a permanent FDNY employee with a legitimate expectation of continued employment except for cause.   He was working as a Paramedic on April 10, 2020.   During his tour of duty, he was followed by a television camera crew.   He was photographed while he was working.   The media broadcast company for which this camera crew worked published a report on the work of the FDNY ambulance crew that day and that report circulated, *inter alia,* on YouTube.

66.     The content of the media coverage in which Mr. Nunez can be seen concerned matters of enormous public interest, including the extremely difficult working conditions of FDNY EMTs and Paramedics working in the City of New York during the height of the COVID-19 pandemic and the enormous strains on the City's health care systems and the emergency medical services provided by the FDNY.

67.     By letter dated April 26, 2020, the same day Mr. Rugen was suspended without pay and Ms. Bonilla was "restricted," the FDNY "restricted" Mr. Nunez's employment without explanation.   Upon being restricted, Mr. Nunez lost the ability to work extended shifts or extra shifts, to earn pay premiums associated with working at night, and to earn other allowances otherwise available to EMTs and Paramedics who work in the field.   He is required to report to work each day, but is not permitted to wear a uniform.   Because of the FDNY's policy of notifying other entities that provide emergency medical services in the 911 system of the restriction, and, by that notification, precluding those entities from deploying Mr. Nunez as a Paramedic on one of their ambulances in the 911 system, Mr. Nunez is effectively barred from practicing his profession.

68.     On April 27, 2020, Local 2507, by its counsel, wrote the FDNY's Chief Legal Counsel and Deputy Commissioner for Legal Affairs and Administration, Terryl Brown, complaining (1) that Mr. Nunez had not been afforded notice of what the department believed he

had done wrong and (2) that the FDNY had not investigated claims of wrongdoing before acting. Ms. Brown responded that the action taken was not disciplinary or punitive but was only a "precautionary measure" taken while the FDNY investigated charges of misconduct. Ms. Brown did not identify in any respect the nature of those charges. She stated that the actions taken by the FDNY were "not new" and constitute a practice commonly used by the FDNY.

69. FDNY personnel have not told Mr. Nunez anything concerning the basis for the "restriction" of his work. FDNY personnel have never afforded Mr. Nunez any opportunity to explain why the imposition of the restriction is without basis. He was not asked for any details about any episode at work.

70. Upon information and belief, the FDNY restricted Mr. Nunez because he appeared in media coverage of the work of EMTs and Paramedics.

71. On June 17, 2020, only hours after Plaintiff John Rugen was interviewed by FDNY personnel, Mr. Nunez was notified that his restriction was lifted. He was restored to full duty. He has never been interviewed or questioned in any way by the FDNY concerning the grounds for his restriction. He has not been provided any information concerning the FDNY's decision to lift the restriction. He has not been advised whether the FDNY has reached a conclusion regarding its concerns about his conduct that led to the imposition of the restriction.

72. Megan Pfeiffer is a permanent FDNY employee with a legitimate expectation of continued employment except for cause. During the COVID-19 pandemic, camera crews have followed Megan Pfeiffer as she responded to 911 calls. She has been photographed at work and has appeared in and has been quoted in press reports concerning the work of EMTs and Paramedics. Ms. Pfeiffer was working as a Paramedic on or about April 10, 2020. During her tour of duty, she was followed by a television camera crew. The media broadcast company for which this camera crew worked published a report on the work of the FDNY ambulance crew

that day and that report circulated, *inter alia,* on YouTube.

73.     The content of the media coverage in which Ms. Pfeiffer can be seen concerned matters of enormous public interest, including the extremely difficult working conditions of FDNY EMTs and Paramedics working in the City of New York during the height of the COVID-19 pandemic and the enormous strains on the City's health care systems and the emergency medical services provided by the FDNY.   In interviews with national and local television companies in late March and April 2020, Ms. Pfeiffer commented on the high number of very sick people being treated by EMTs and paramedics in New York City and the challenge of self-isolating, disclosing that she and other paramedics had resorted to sleeping in the station or in cars to protect their families.   She discussed the concerns EMTs and Paramedics have shared about the availability of protective equipment, questioned the wisdom of guidelines recommending the use of N95 masks only for CPR, intubation or when nebulizing patients, and reported that she and her colleagues were re-using N95 and wearing surgical masks over them. She also described crying at home and having anxiety attacks, but spoke of Paramedics supporting each other and the availability of counseling services.

74.     Ms. Pfeiffer's communications with the media were undertaken as a citizen and not as an employee of the FDNY.   She never held herself out to be speaking for anyone other than herself.

75.     Nothing in Ms. Pfeiffer's communications harmed the internal operations of the FDNY or impaired the harmonious working relations of FDNY employees.   In fact, the essence of those communications and the resulting media reporting was that EMTs and Paramedics were performing their work heroically under extremely difficult circumstances. Notably, in nearly every one of these broadcasts, the television host thanked Ms. Pfeiffer for her service and lauded her co-workers.

76.     Nothing that Ms. Pfeiffer said in her communications with the media revealed any personal health information of any individual. Upon information and belief, no individual has complained that any of Ms. Pfeiffer's communications resulted in the unlawful disclosure of that individual's protected health information.

77.     By letter dated April 26, 2020, the same date Mr. Rugen was suspended and Mr. Nunez and Ms. Bonilla were restricted, the FDNY restricted Ms. Pfeiffer's employment, barring her from performing patient care, without explanation. Upon being restricted, Ms. Pfeiffer lost the ability to work extended shifts or extra shifts, to earn pay premiums associated with working at night, and to earn other allowances otherwise available to EMTs and Paramedics who work in the field.   She is required to report to her duty station each day, but is not permitted to wear a uniform.   Because of the FDNY's policy of notifying other entities that provide emergency medical services in the 911 system of the restriction, and, by that notification, precluding those entities from deploying Ms. Pfeiffer as a Paramedic on one of their ambulances in the 911 system, Ms. Pfeiffer is effectively barred from practicing her profession.

78.     On April 27, 2020, Local 2507, by its counsel, wrote the FDNY's Chief Legal Counsel and Deputy Commissioner for Legal Affairs and Administration, Terryl Brown, complaining (1) that Ms. Pfeiffer had not been afforded notice of what the department believed she had done wrong and (2) that the FDNY had not investigated claims of wrongdoing before acting. Ms. Brown responded that the action taken was not disciplinary or punitive but was only a "precautionary measure" taken while the FDNY investigated charges of misconduct.   Ms. Brown did not identify in any respect the nature of those charges.   She stated that the actions taken by the FDNY were "not new" and constitute a practice commonly used by the FDNY.

79.     On or about April 28, 2020, Ms. Pfeiffer received a telephone call from her supervisor confirming that she was "restricted."   When she received the call, she asked the supervisor why she was being restricted.   He responded that he did not know but that he understood that it had something to do with "some interviews." Ms. Pfeiffer has been told nothing more about the basis for the restriction and FDNY personnel have never afforded Ms. Pfeiffer any opportunity to explain why the imposition of the restriction is without basis.

80.     Upon information and belief, the FDNY restricted Ms. Pfeiffer's employment because of her communications with the press.

81.     On June 17, 2020, only hours after Plaintiff John Rugen was interviewed by FDNY personnel, Ms. Pfeiffer was notified that her restriction was lifted.   She was restored to full duty. She has never been interviewed or questioned in any way by the FDNY concerning the grounds for her restriction.   She has not been provided any information concerning the FDNY's decision to lift the restriction.   She has not been advised whether the FDNY has reached a conclusion regarding its concerns about her conduct that led to the imposition of the restriction.

82.     Upon information and belief, the decisions to restrict the employment of Plaintiffs Bonilla, Nunez, and Pfeiffer were made by Defendant Carlos Velez.   Upon information and belief, Defendant Carlos Velez knew or should have known that the restriction of these plaintiffs' employment because of their communications with the press were unconstitutional actions, or, Defendant Carlos Velez took those actions with reckless disregard for their unconstitutionality.   Further, upon information and belief, Defendant Carlos Velez knew or should have known that the failure to provide plaintiffs Bonilla, Nunez and Pfeiffer notice of the grounds for these actions and a timely meaningful opportunity to be heard as to why those purported grounds are meritless was an unconstitutional action, or was in reckless

disregard for its unconstitutionality.

83.     Plaintiffs Bonilla, Nunez and Pfeiffer suffered great anxiety as a result of these unconstitutional acts.

## I.   FDNY'S INFRINGEMENT OF FREEDOM OF EXPRESSION

### AS AND FOR A FIRST CAUSE OF ACTION

84.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 83, above, with the same force and effect as though set forth here in full.

85.     By its actions Defendants retaliated against plaintiff John Rugen because he exercised his right to speak on matters of public concern in violation of the First Amendment of the U.S. Constitution.

### AS AND FOR A SECOND CAUSE OF ACTION

86.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 86, above, with the same force and effect as though set forth here in full.

87.     By its actions Defendants retaliated against plaintiff John Rugen because he exercised his right to speak on matters of public concern in violation of the Free Speech Clause of New York Constitution, Article I, § 8.

### AS AND FOR A THIRD CAUSE OF ACTION

88.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 87, above, with the same force and effect as though set forth here in full.

89.     By its actions Defendants retaliated against plaintiff Elizabeth Bonilla because she exercised her right to speak on matters of public concern in violation of the First Amendment of the U.S. Constitution.

### AS AND FOR A FOURTH CAUSE OF ACTION

90.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in

paragraphs 1 through 89, above, with the same force and effect as though set forth here in full.

91.     By its actions Defendants retaliated against plaintiff Elizabeth Bonilla because she exercised her right to speak on matters of public concern in violation of the Free Speech Clause of New York Constitution, Article I, § 8.

## AS AND FOR A FIFTH CAUSE OF ACTION

92.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 91, above, with the same force and effect as though set forth here in full.

93.     By its actions Defendants retaliated against plaintiff Alexander Nunez because he exercised his right to speak on matters of public concern in violation of the First Amendment of the U.S. Constitution.

## AS AND FOR A SIXTH CAUSE OF ACTION

94.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 93, above, with the same force and effect as though set forth here in full.

95.     By its actions Defendants retaliated against plaintiff Alexander Nunez because he exercised his right to speak on matters of public concern in violation of the Free Speech Clause of New York Constitution, Article I, § 8.

## AS AND FOR A SEVENTH CAUSE OF ACTION

96.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 95, above, with the same force and effect as though set forth here in full.

97.     By its actions Defendants retaliated against plaintiff Megan Pfeiffer because she exercised her right to speak on matters of public concern in violation of the First Amendment of the U.S. Constitution.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

98.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in

paragraphs 1 through 97, above, with the same force and effect as though set forth here in full.

99. By its actions Defendants retaliated against plaintiff Megan Pfeiffer because of she exercised her right to speak on matters of public concern in violation of the Free Speech Clause of New York Constitution, Article I, § 8.

## AS AND FOR A NINTH CAUSE OF ACTION

100. Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 99, above, with the same force and effect as though set forth here in full.

101. The imposition of adverse actions against Local 2507's members described herein and the consequent chilling effect on those members' exercise of their First Amendment rights, was intended and does in fact interfere with Local 2507's exercise of its own right under the First Amendment of the U.S. Constitution to communicate to the public concerning the difficulties, dangers and stresses faced by Local 2507 members in their work. Because Local 2507 relies upon its members' participation to support its effective communication with the public, the FDNY's actions interfere with and impede Local 2507's ability to engage in expression protected by the First Amendment. In addition, Local 2507 expends resources representing its members in FDNY investigations and disciplinary actions. Because the FDNY's investigations and disciplinary actions violate the First Amendment, Local 2507 is required to expend resources representing its members and, thus, has been forced unlawfully to divert those resources that Local 2507 should instead have been permitted to expend on its programmatic objectives.

## AS AND FOR A TENTH CAUSE OF ACTION

102. Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 101, above, with the same force and effect as though set forth here in full.

103. The imposition of such adverse actions against Local 2507's members

described herein and the consequent chilling effect on those members' exercise of their First Amendment rights, was intended and does in fact interfere with Local 2507's exercise of its own right under New York Constitution, Article I, § 8, to communicate to the public concerning the difficulties, dangers and stresses faced by Local 2507 members in their work. Because Local 2507 relies upon its members' participation to support its effective communication with the public, the FDNY's actions interfere with and impede Local 2507's ability to engage in expression protected by Article I, § 8. In addition, Local 2507 expends resources representing its members in FDNY investigations and disciplinary actions. Because the FDNY's investigations and disciplinary actions violate Article I, § 8, Local 2507 is required to expend resources representing its members and, thus, has been forced unlawfully to divert those resources that Local 2507 should instead have been permitted to expend on its programmatic objectives.

## II. FDNY'S DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

### AS AND FOR AN ELEVENTH CAUSE OF ACTION

104. Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 103, above, with the same force and effect as though set forth here in full.

105. The FDNY's practice and custom of suspending permanent employees in the position of EMT or Paramedic without affording them notice of the grounds for the suspension and a meaningful opportunity to be heard as to why those grounds are without merit violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, and Article I, Section 6, of the New York Constitution.

### AS AND FOR A TWELFTH CAUSE OF ACTION

106. Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 105, above, with the same force and effect as though set forth here in full.

107.     Pursuant to New York Civil Service Law § 75, and by virtue of his status as a permanent employee of the FDNY, plaintiff Rugen has a legitimate expectation of continued employment with the FDNY absent cause for suspension or termination.   That expectation is a property right protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

108.     By suspending Mr. Rugen's employment without disclosing the factual basis or explaining the reason for the suspension and without affording him any opportunity whatsoever to explain why the FDNY's facts or reasons might be false, mistaken, or without merit before, at the time of, or promptly after the suspension, defendants deprived Rugen of his property without due process in violation of the Fourteenth Amendment of the United States Constitution and without due process in violation of Article I, Section 8 of the New York Constitution.

### III. FDNY'S DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS

### AS AND FOR A THIRTEENTH CAUSE OF ACTION

109.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 108, above, with the same force and effect as though set forth here in full.

110.     The FDNY's practice and custom of restricting permanent employees in the position of EMT or Paramedic from participating in the 911 system without affording them notice of the grounds for the restriction and a meaningful opportunity to be heard to clear their names and restore their opportunity to work with employers in the 911 system deprives them of their liberty in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, and Article I, Section 6, of the New York Constitution.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION

111.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in

paragraphs 1 through 110, above, with the same force and effect as though set forth here in full.

112.     By restricting the employment of plaintiff Nunez and barring him from participating as a Paramedic in the 911 system without affording him any notice of the grounds for such restriction and a meaningful opportunity to be heard to clear that restriction, defendants have deprived him of liberty without due process in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 6, of the New York Constitution.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

113.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 112, above, with the same force and effect as though set forth here in full.

114.     By restricting the employment of plaintiff Bonilla and barring her from participating as a Paramedic in the 911 system without affording her any notice of the grounds for such restriction and a meaningful opportunity to be heard to clear that restriction, defendants have deprived her of liberty without due process in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 6, of the New York Constitution.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION

115.     Plaintiffs repeat, reallege and incorporate herein each of the allegations in paragraphs 1 through 114, above, with the same force and effect as though set forth here in full.

116.     By restricting the employment of plaintiff Pfeiffer and barring her from participating as a Paramedic in the 911 system without affording her any notice of the grounds for such restriction and a meaningful opportunity to be heard to clear that restriction, defendants have deprived her of liberty without due process in violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 6, of the New York Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays that judgment be entered:

117.     Declaring that the defendants deprived plaintiffs Rugen, Bonilla, Nunez and Pfeiffer of their rights under the First Amendment to the United States Constitution;

118.     Declaring that the defendants deprived plaintiffs Rugen, Bonilla, Nunez and Pfeiffer of their Free Speech rights under Article I, § 8, of the Constitution of the State of New York;

119.     Declaring that the defendants deprived plaintiff Local 2507 of its rights under the First Amendment of the United States Constitution;

120.     Declaring that the defendants deprived plaintiffs\ Local 2507 of its Free Speech rights under Article I, § 8, of the Constitution of the State of New York;

121.     Declaring that the defendants deprived plaintiff Rugen of his property, the right to continuation of his employment without interruption except for cause without due process of law in violation of the Fourteenth Amendment to the United States Constitution;

122.     Declaring that the defendants deprived plaintiff Rugen of his property, the right to continuation of his employment without interruption except for cause, without due process of law in violation of Article I, Section 6 of the New York Constitution;

123.     Declaring that the defendants deprived plaintiffs Rugen, Bonilla, Nunez, and Pfeiffer, of their liberty, the right to work in their profession as EMTs and Paramedics, without due process of law in violation of the Fourteenth Amendment of the U.S. Constitution;

124.     Declaring that the defendants deprived plaintiffs Rugen, Bonilla, Nunez, and Pfeiffer, of their liberty, the right to work in their profession as EMTs and Paramedics, without due process of law in violation of Article I, section 6 of the Constitution of the State of

New York;

125.     Declaring that defendants' policies that bar EMTs and Paramedics from commenting as citizens on issues of public concern violate the First Amendment of the U.S. Constitution;

126.     Declaring that defendants' practice of enforcing policies in a manner that penalizes EMTs and Paramedics who comment on issues of public concern has a chilling effect on free speech and violates the First Amendment of the U.S. Constitution;

127.     Declaring that defendants' policies that bar EMTs and Paramedics from commenting as citizens on issues of public concern violate the New York Constitution Article I, § 8;

128.     Declaring that defendants' practice of enforcing policies in a manner that penalizes EMTs and Paramedics who comment on issues of public concern has a chilling effect on free speech and violates the New York Constitution, Article I, § 8;

129.     Enjoining defendants from further restricting the employment of plaintiffs Bonilla, Nunez, Pfeiffer and Rugen because of their exercise of constitutionally protected rights, and compelling defendants to restore plaintiffs Bonilla, Nunez, Pfeiffer and Rugen to unrestricted status with restoration of all compensation and benefits by plaintiffs as a result of their being placed in restricted status;

130.     Enjoining defendants from disciplining plaintiff Rugen because of the exercise of constitutionally protected rights, and compelling defendants to restore plaintiff Rugen to full duty with full restoration of compensation benefits lost by plaintiff Rugen as a result of being suspended;

131.     Enjoining defendants from continuing a practice and policy of restricting

or suspending the employment of EMTs and Paramedics without promptly affording them notice of the grounds for such action and a prompt meaningful opportunity to be heard on why such grounds might be false, mistaken or not an appropriate basis for suspension or restriction;

132.    Restoring to Plaintiffs Bonilla, Nunez, Pfeiffer, and Rugen all compensation and benefits lost as a result of defendants' restriction of their employment;

133.    Expunging from all personnel files and related records any reference to the suspension and restriction of the plaintiffs;

134.    Granting plaintiffs Rugen, Bonilla, Nunez and Pfeiffer an award of damages to compensate them for their suffering as a consequence of the unconstitutional acts complained of herein;

135.    Granting plaintiffs costs, disbursements and reasonable attorneys' fees; and

136.    Granting such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         December 21, 2020

GLADSTEIN, REIF & MEGINNISS, LLP

By: /s/ Walter M. Meginniss, Jr.
    Walter M. Meginniss, Jr. (WM-1543)
    Amelia Tuminaro (AT-3490)
    39 Broadway, Suite 2430
    New York, New York   10006
    (212) 228-7727
    tmeginniss@grmny.com
    atuminaro@grmny.com